BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA  94102
Telephone:  (415) 436-7700

Counsel for Defendant CRANNEY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HIROSHIGE CRANNEY, ) <br> ) <br> Defendant. ) <br> ) <br> _____ ) | No. CR 07-360 PJH <br><br> **DEFENDANT'S SENTENCING MEMORANDUM** <br><br> Date:  January 8, 2007 <br> Time:  2:30 p.m. <br> Court:  The Honorable Phyllis J. Hamilton |

## INTRODUCTION

Mr. Hiroshige Cranney now appears before the Court for sentencing, having pled guilty to one count of distributing Schedule III controlled substances (steroids) in violation of 21 U.S.C. 841(a)(1) and (b)(1)(D).  The Probation Officer has recommended a sentence of 12 months and one day, which would result in Mr. Cranney's incarceration for approximately 10 months (including standard time off for good behavior).  Mr. Cranney concurs with the Probation Officer's findings that the applicable Guideline range is Offense Level 13, Criminal History category I.  For the reasons articulated below, in accordance with 18 U.S.C. § 3553(a), Mr. Cranney respectfully requests the Court to sentence him to six months of home confinement, which is the low end of the Guideline range at Offense Level 10, Criminal History category I.

**STATEMENT OF FACTS**

The instant case is a straightforward one involving the sale of steroids over the internet. While in college at San Francisco State University, Mr. Cranney got involved in body building and personal training. Through his body-building activities, Mr. Cranney learned about steroids. Because he wanted "the big-guy kind of look" he elected to take steroids after learning how to obtain them from other members and trainers at his gym. Stupidly, he also elected to sell steroids over the internet once he was exposed to the underground world of steroids from the individuals he interacted with at the gym. Mr. Cranney fully accepts responsibility for this illegal conduct; he understands there is no excuse for his bad choices and no one to blame for the instant offense but himself. He is incredulous with himself that he could have been so stupid, and understands that he must now bear the consequences.

While body building, Mr. Cranney simultaneously pursued a degree in accounting from San Francisco State. He was a member of the student accounting organization, and anticipated that he would obtain his CPA after graduation. Unfortunately, it is now extremely unlikely that Mr. Cranney will be admitted to practice as a CPA with a felony conviction. He has spent the last year trying to redefine a career path and figure out what other professional opportunities are open to him. Given his highly specialized college training in accounting, Mr. Cranney has had difficulty searching for alternative careers. He is now working as a personal trainer (obviously, without interfacing in any way with steroids) to try to earn money at the current time, as this is one of the other skill sets that he has developed as a young adult. Each day, Mr. Cranney thinks about his lost opportunity to earn a CPA and support himself with his college education. Once again, he realizes that he has no one to blame but himself for his inability to now utilize his college education.

Mr. Cranney has learned a tremendous amount from this experience. He is only twenty-five years old, and from conversations with Mr. Cranney, it is clear to undersigned defense counsel that Mr. Cranney approaches the sale of steroids with a certain naivete about their ill effects. It appears that Mr. Cranney got caught up in the body building world at a young and impressionable age, saw

numerous examples around him of individuals using and sharing steroids, and got involved in the distribution of steroids himself without thinking deeply about the fact that steroids are dangerous, illegal drugs. In the particular gym world that Mr. Cranney became involved with, it seems that steroids were treated as a benefit to the human body and as a "boon" to manhood, rather than as the harmful destructive agents that we know they are. This is not stated to attempt to minimize or excuse Mr. Cranney's behavior; he is hugely remorseful and fully acknowledges that he knew steroids were "undercover" and illegal agents to sell. It is instead mentioned to try to give the Court a picture of Mr. Cranney's role models at his gym in 2006, as well as his youthful and naive desire to be a "player" in the world in which physical strength is associated with "real" manhood. It is expressed to try to provide the Court with the psychological backdrop to Mr. Cranney's terrible decision to sell steroids over the Internet.

Since that time, Mr. Cranney has realized that both his image of "manhood" and success as a man were incredibly juvenile. This federal prosecution has woken him up to the fact that steroids are not beneficial in any way; they work in contravention to a normal, healthy life. Although Mr. Cranney still works out, he has changed communities, gyms, and his attitude towards healthy body-building. He is now trying to concentrate on building a different career path from his accounting training while he builds savings while working as a personal trainer in a healthy manner.

**ARGUMENT**

**I.    The Guideline Range of 12-18 Months is Only the Starting Point for this Court**

On December 10, 2007, the United States Supreme Court decided *United States v. Gall*, 2007 U.S. LEXIS 13083. In *Gall*, an ecstasy distribution case in which the defendant was in college at the time of the offense, the district court departed from the applicable Guideline range of 30-37 months and sentenced the defendant to 36 months of probation. The Eighth Circuit reversed the district court's sentence. In its opinion affirming the district court and reversing the Eighth Circuit, the Supreme Court set forth the proper analysis that district courts should follow in evaluating a proper sentence in the wake of *United States v. Booker*, 543 U.S. 220 (2005):

>A district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In doing so, he may not presume that the Guideline range is reasonable. He must make an individualized assessment based on all the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.

*Gall*, 2007 U.S. LEXIS 13083 at 20-21 (citations omitted). "It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id.* at 26. Each sentence, regardless of where the sentence falls in comparison to the applicable Guideline range, is reviewed by the Court of Appeals under an abuse of discretion standard. *Id.* After *Gall*, it is clear that federal district courts now enjoy tremendous discretion on a case-by-case basis at sentencing.

In the instant case, Mr. Cranney seeks a small deviation from the applicable Guideline range. The Probation Officer has recommended a sentence of 12 months and one day, which amounts to ten months in federal custody (with standard good time deducted). Mr. Cranney instead asks the Court to exercise its judicial discretion, as affirmed by Gall, and to sentence him to six months of home confinement and three years of probation. The Guideline range that would permit such a sentence is three levels lower than the applicable Guideline range. In support of his request, Mr. Cranney herein argues that each of the applicable factors under 18 U.S.C. § 3553(a) supports a sentence of home confinement, rather than one of imprisonment.

**II.    The Factors Listed in 18 U.S.C. § 3553(a) Support the Imposition of a Home Detention Sentence In this Matter**

    **A.    The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Cranney**

Both the offense conduct and Mr. Cranney's history and characteristics support the imposition of a mitigated sentence in this matter. As described above, Mr. Cranney is a youthful offender who

sold and used steroids for approximately six months after getting caught up in the world of body building at his gym.  He was only 24 when he began to sell the steroids, and 25 when he was detected by the DEA.  Mr. Cranney's age is one factor the Court should consider that supports a mitigated sentence here.

Another characteristic of Mr. Cranney relevant to the sentencing analysis is his extraordinary acceptance of responsibility.  When detected, Mr. Cranney immediately provided agents with a full confession and made sincere efforts to cooperate with the DEA.  Unfortunately, Mr. Cranney did not obtain the steroids he sold from underground labs or domestic manufacturers, which was the kind of information that the DEA agent assigned to this case was looking for.  Mr. Cranney instead obtained steroids over the internet himself, from anonymous overseas sources (Europe in particular).  As the DEA was only interested in ground-based, domestic sources of anabolic steroids (i.e. entities that are manufacturing steroids in the United States) Mr. Cranney did not have any information to offer. Over the four months after he was arrested, Mr. Cranney diligently scoured the Internet looking for domestic sources of steroids through the links he knew about.  When undersigned counsel went to the DEA agent with the names of these illicit websites, the DEA informed her that those leads had already been developed independently.  As a result, Mr. Cranney's efforts at earning a departure from the government under U.S.S.G. § 5K1.1 were thwarted.  The fact that he made a sincere effort to cooperate, however, indicates that his mindset from the beginning has been to make amends for his crimes and re-set himself on a law-abiding path.  Mr. Cranney asks the Court to take his efforts in this vein into account when determining an appropriate sentence.

A further characteristic of Mr. Cranney supporting a home confinement sentence is the fact that Mr. Cranney has previously spent time on probation and had no difficulty adjusting to supervision. He should thus be considered a good candidate for probation supervision. Although Mr. Cranney does have an expunged conviction for DUI with Injury, he suffered this conviction when he was barely 18 years old.  He then successfully completed four years of probation successfully, earned a college degree in accounting, and has good prospects for a law-abiding future.  As noted by the

DEFENDANT'S SENTENCING MEMORANDUM
*UNITED STATES v. CRANNEY*, 07-360 PJH        - **5** -

Probation Officer in his Sentencing Recommendation, "he is expected to contribute positively to his community." At this point in his life, he does not use illegal substances of any kind.

The circumstances of the offense itself reveal the rather naive mindset about steroids that Mr. Cranney entertained during this period, as Mr. Cranney utilized his own name "Hiroshige" in association with the sell.com account and registered three credit cards in his own name for payments made to the account. *See* PSR at ¶ 7, ¶ 9. Moreover, Mr. Cranney had packages of steroids delivered directly to his apartment in San Francisco. *Id.* at ¶ 9. It thus does not appear that Mr. Cranney took any significant steps to avoid detection in connection with his actions on sell.com, which perhaps indicates that Mr. Cranney's mindset was not clearly focused on the concept of steroids as "bad" substances. Moreover, over the course of no longer than six months, Mr. Cranney made approximately three sales per week.[1] These factors do not indicate a sophisticated, surreptitious, large-scale criminal operation; they instead indicate that Mr. Cranney's criminal activity was ill-thought out, unsophisticated, and of relatively small scale. The lack of aggravating factors associated with this offense, when considered in conjunction with the mitigating factors particular to Mr. Cranney, further justifies a sentence that includes home confinement in lieu of federal prison time.

**B.    The Need for the Sentence Imposed and the Types of Sentences Available.**

The second factor under 18 U.S.C. § 3553(a) requires the Court to consider the need for the sentence imposed a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; b) to afford adequate deterrence; c) to protect the public from further crimes; and d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). In

---

[1] The defense has lodged an objection to Paragraph 21 of the Presentence Report, which states that Mr. Cranney sold 10,825 units of steroids over the internet between May, 2005 and October 2006. As a starting place, Mr. Cranney disputes that he sold steroids on sell.com for this length of time; he instead remembers the sale period as no more than a few, but in no event longer than six months. The DEA agent in Connecticut in charge of the matter is sending further discovery from sell.com on the 10,825 unit amount and the alleged sales that made up that amount. This discovery will be delivered to defense counsel on Monday, January 7, 2008 and the matter should be resolved prior to Court on January 8, 2008.

DEFENDANT'S SENTENCING MEMORANDUM
*UNITED STATES v. CRANNEY*, 07-360 PJH        - 6 -

1  conjunction with this factor, the Court should consider the third factor under 3553(a), which is "the
2  kinds of sentences available." 18 U.S.C. § 3553(a)(3). Here, the kinds of sentences that are
3  technically available to the Court include probation, probation with a period of home or community
4  confinement, and a custodial sentence. As recognized by the *Gall* court, a probationary sentence is
5  "not granted out of a spirit of leniency" and "is not merely letting an offender off":

> Custodial sentences are qualitatively more severe that probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially reduce their liberty. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the Court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associated with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual "special conditions" imposed by the Court.

*Gall, supra*, at 18 (citations omitted). In many cases, probation coupled with a condition of home confinement is viewed as an adequate punishment, both to promote respect for the law, reflect the seriousness of the offense, and afford adequate deterrence. Such is the case with Mr. Cranney. Since being arrested and prosecuted on the federal level, Mr. Cranney has thought hard about and recognized the importance of staying on the correct side of the law. During this prosecution, Mr. Cranney completed a lengthy college education and graduated with a heavy conscience, knowing that he has blown his opportunity to use the several years of college training he acquired to production ends. When apprehended, Mr. Cranney fully confessed and was eager to cooperate with agents. These facts, coupled with the generally unsophisticated nature of the crime and Mr. Cranney's prospects for fruitful employment as a college graduate, indicates both that Mr. Cranney has learned his lesson and is a low risk for recidivism. There is similarly no indication from Mr. Cranney's background that he poses a risk as a violent offender or an individual that the public must be protected from through incarceration.

Moreover, in terms of vocational and educational training, Mr. Cranney does not require (and would not likely benefit from) the types of training and education that are available in the prison system. As a college graduate, he needs assistance from the U.S. Probation Office to develop a new career path that does not involve accounting. A probation sentence would allow Mr. Cranney to be

DEFENDANT'S SENTENCING MEMORANDUM
*UNITED STATES v. CRANNEY*, 07-360 PJH       - 7 -

closely monitored by this Court to ensure that he makes forward progress. It is, in sum, the sentence "sufficient, but no greater than necessary" to meet the sentencing goals articulated in 18 U.S.C. § 3553(a).

    **C.**    **The Need to Avoid Unwarranted Sentencing Disparities[2]**

The final applicable factor under 18 U.S.C. §3553(a) is the need for this Court to avoid unwarranted sentencing disparities in connection with anabolic steroids cases. On one hand, this factor is difficult to weigh, as the Northern District of California has not brought substantial steroid prosecutions. In undersigned counsel's experience, steroid cases are relatively rare in this district. A review of one particularly high profile case, however, reveals that a twelve month and one day sentence for Mr. Cranney would be disproportionate, when considering both the extent of his involvement in criminal activity, the scale of his activity, and the small benefits he reaped from participation in criminal activity.

As this Court is aware, the Northern District of California courts handled the BALCO prosecution a few years ago. The applicable case number is 04-44 SI. In that case, Victor Conte and James Valente were prosecuted for manufacturing and distributing steroids to professional and high-level amateur athletes – leading to large controversy over the legitimacy of certain Olympic and Hall of Fame records. These men were accused and charged with 42 crimes - including large scale manufacturing, distributing, and selling steroids. Mr. Conte, the president and founder of BALCO, and Mr. Valente, the vice president in command, were the two highest officers at that company who have since admitted to running large scale "doping" operations over the course of several years. Mr Conte has gone so far as to call the entire Olympic competition " a fraud" due to agencies such as his that manufactured and administered sophisticated steroids. Yet at sentencing, the government recommended four months of custody and four months of home confinement for Mr. Conte, which

---

[2] The fourth 3553(a) factor, the Guideline range, has been previously discussed. According to undersigned defense counsel's review, the fifth factor (policy statements issued by the Sentencing Commission) and the seventh factor (the need to provide restitution to any victim) are not applicable to Mr. Cranney's case.

DEFENDANT'S SENTENCING MEMORANDUM
*UNITED STATES v. CRANNEY*, 07-360 PJH    - 8 -

1  the Court adopted.  Mr. Valente was sentenced to straight probation for three years.

2  When Mr. Cranney's case is considered against the backdrop of the BALCO prosecution, a sentence of 12 months and one day in prison appears disproportionately harsh.  While Mr. Cranney fully accepts responsibility for his actions and acknowledges that his actions were against the law and wrong, it is also important for the Court to consider what Mr. Cranney did not do over the course of his criminal conduct.  Namely, Mr. Cranney was not in the business of manufacturing steroids or distributing performance-enhancing drugs to athletes hoping to alter the results of major athletic events.   Nor did Mr. Cranney profit at the level that the individuals running BALCO did for the offenses committed in that case.  Compared to BALCO, Mr. Cranney's criminal conduct is put into perspective on the scale of federal DEA steroids cases.  A sentence of six months home confinement, incorporated into three years of probation, is the sentence that is sufficient, but no greater than necessary, in Mr. Cranney's case.

## CONCLUSION

Mr. Cranney respectfully requests this Court to sentence him to 6 months of home confinement and three years of probation.

DATED: January 4, 2008

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

/S/

_____
ELIZABETH M. FALK
Assistant Federal Public Defender