JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

LAUREL BEELER (CSBN 187656)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-6765
    Facsimile: (415) 436-7234
    E-mail:    laurel.beeler@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 07 360 PJH |
|     Plaintiff, | |
| v. | UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM ON SECTION 3553(a) FACTORS |
| HIROSHIGE CRANNEY, | |
|     Defendant. | DATE: January 8, 2008<br>TIME: 1:30 p.m.<br>COURT: Judge Hamilton |

Based on Cranney's cooperation and extraordinary acceptance of responsibility, the United States recommends the equivalent of a two-level downward adjustment to the Sentencing Guidelines. The Guidelines are based on an offense level 13 and a criminal history category I, and the adjustment results in an offense level 10, criminal history category I, and a range of 8 to 14 months in Zone C. The United States recommends an 8-month split sentence (or 4 months' custody and 4 months' home confinement as a condition of supervision).

## I. GUIDELINES CALCULATIONS

The parties and the probation officer agree on the Guidelines calculations, which are as follows:

| | | | |
|---|---|---|---|
| a. | Base Offense Level, U.S.S.G. § 2D1.1(a)(3) & (c)(12): (Based on at least 10,000 units of a Schedule III substance) | | 16 |
| b. | Distribution through mass marketing by means of interactive computer service, U.S.S.G. § 2D1.1(b)(5): | | +2 |
| c. | Safety valve, U.S.S.G. § 2D1.1(b)(9): | | - 2 |
| d. | Acceptance of responsibility: | | <u>-3</u> |
| e. | Adjusted offense level | | 13 |
| | Criminal History Category | | I |
| | Guidelines Range: | | 12 to 18 months |

## II. 18 U.S.C. § 3553(a)

In imposing its sentence, the Court must consider the factors enumerated in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford deterrence, and to provide the defendant with needed educational or vocational training or other corrective treatment in the most effective manner.

Under ordinary circumstances, the Guidelines would fairly represent Cranney's conduct in this case. While the United States does not disagree with the defense that Cranney was unsophisticated, still, he sold illegal steroids carelessly over the Internet to buyers that he did not know. As the defense recognizes, this not only was thoughtless but also was dangerous. Also, while the United States appreciates the argument that Victor Conte received only an 8-month split sentence, <u>see</u> CR 04 0044 SI, the Guidelines in effect then provided for a substantially lower base offense level of 6 based on a different mechanism for calculating units of steroids. Subsequently, the Sentencing Commissions amended the Guidelines, which resulted in the base offense level 16 that Cranney faces here. That policy determination – that the previous Guidelines did not adequately represent the seriousness of steroids offenses – embodies section 3553(a)'s recognition of the need for a sentence to reflect the seriousness of the offense and to provide just punishment.

Cranney is different than the ordinary defendant, however. From the moment that FBI

agents executed the search and arrest warrants, he cooperated, first by providing access to his computer and other evidence, and then by debriefing extensively. Among other things, he told the agents the following:

- How he met suppliers located in Romania, Greece, Poland, and Great Britain.
- How he communicated with them (through particular email addresses and through particular steroid chat rooms).
- How he purchased drugs from his international sources (including his payments by Western Union wire transfers).
- How he sold steroids through the web site "sell.com" (including his depositing of his proceeds into his Wells Fargo checking account).
- How he used a specific domestic supplier in Southern California before discontinuing his purchases based on suspicion of counterfeit products.
- What his Internet research revealed about domestic suppliers of illegal steroids.

Ultimately, the FBI agents and the assistant United States attorney in the district of Connecticut viewed Cranney's debriefing as "cooperative" but not "cooperation" within the meaning of U.S.S.G. § 5K1.1 because (a) Cranney's information about his specific dealings with overseas suppliers known only to him by email addresses would not result in actual prosecutions and (b) the Internet research was information that the agents already knew or could obtain themselves.

The United States in this district views Cranney's proffer somewhat differently. Given the relative newness of steroids prosecutions, knowing how international sales work is helpful to the United States generally in its investigation of steroid offenses. See U.S.S.G. § 5K1.1 (in determining the appropriate reduction for cooperation, a court may consider the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered).[1] The United States also views Cranney's proffer as more than just a standard safety-valve debriefing. He provided extensive information, not only about his offense and conduct that was part of the common scheme or plan (which is what U.S.S.G. § 5C1.2(a)(5)

---

[1] The United States reached the conclusion – that Cranney's proffer will be helpful – by disclosing the cooperation in another investigation pending in this district. The United States will provide the full proffer to the DEA agent assigned to that investigation.

UNITED STATES' SUPPLEMENTAL SENTENCING
MEMORANDUM (CR 07 360 PJH)                      3

1  requires), but also about other conduct well beyond the scope of a typical safety-valve interview,
2  including extensive information about suppliers.
3      Even absent a 5K1.1 departure, Cranney's attempts to cooperate can be seen as extraordinary
4  acceptance of responsibility, either as a downward departure from the Guidelines or as a factor
5  under section 3553(a).  See United States v. Brown, 985 F.2d 478, 482 (9th Cir. 1993)
6  (recognizing this as a ground for departure from the Guidelines where section 3E1.1's reduction
7  does not adequately reflect the degree to which a defendant has accepted responsibility for his
8  conduct).  Moreover, Cranney seems genuinely remorseful, and the United States does not
9  believe that he will offend again.  He continued to attend college after his arrest in November
10 2006, graduating last May, and he seems to be a decent, hard-working, sincere person who wants
11 only to put this behind him.  In the United States' assessment, he has done everything possible to
12 demonstrate not only good intentions, but also good conduct.
13     In sum, the United States agrees that 12-month custodial sentence is too long, and
14 recommends the equivalent of a 2-level decrease to an offense level 10 and a split 8-month
15 sentence with 4 months' custody and 4 months' home detention.  The United States believes that
16 its recommendation fairly reflects the seriousness of the offense, provides just punishment,
17 promotes respect for the law, and affords deterrence.

18 DATED: _____                    Respectfully submitted,

19                                          JOSEPH P. RUSSONIELLO
                                            United States Attorney
20

21                                              /s Laurel Beeler
                                            LAUREL BEELER
22                                          Assistant United States Attorney

UNITED STATES' SUPPLEMENTAL SENTENCING
 MEMORANDUM (CR 07 360 PJH)              4